[No. C018874. Third Dist. Mar. 12, 1996.]

OAKDALE VILLAGE GROUP, Plaintiff and Appellant, v.
DANIEL FONG, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976(b), this opinion is certified for publication with the exception of part I.

540

Bill C. Asakawa for Plaintiff and Appellant.

Hoseit & Koelewyn, H. L. Koelewyn and Norman J. Scott for Defendant and
Respondent.

**RAYE, J.**—Plaintiff Oakdale Village Group (Oakdale), a partnership, sued
defendant Daniel Fong, Oakdale's escrow company, and a title company
alleging conversion and conspiracy in the purchase of a note, and requesting
imposition of a constructive trust. In a previous decision we affirmed the
trial court's grant of summary judgment in favor of the title company.

Following a court trial, the court found in favor of Fong, finding no conversion in the sale of the note or disbursement of the proceeds. Oakdale appeals, arguing the court erred in finding in favor of Fong on the conversion and money had and received causes of action, and the court erred in failing to impose a constructive trust. We shall reverse the judgment and direct the trial court to enter judgment in favor of Oakdale on the cause of action for conversion.

## FACTUAL AND PROCEDURAL BACKGROUND

Oakdale is a California general partnership comprised of the following partners: Franklin and Lily Chinn, Florence and Stanley Quon, Kenneth and Sydney Wang, and Group Management, Inc., a California corporation. Oakdale owned a shopping center which was not financially successful.

Kenneth Wang advanced the partnership over $385,000. Eventually the partnership repaid some of its debt to Wang. Wang claims the partnership repaid $95,920.06; the partnership states it paid all but $26,965. A referee's report, adopted by the trial court, states, "[t]he partnership was indebted to Kenneth Wang in the amount of $26,965.00 immediately prior to the sale of the note in question."

Eventually, Oakdale filed for bankruptcy and, with the bankruptcy court's approval, sold the shopping center. A portion of the purchase price was paid by a note for $370,000 secured by the property.

Prior to the bankruptcy, Wang entered into a partnership with Daniel and Phyllis Fong to purchase a property known as Sunrise Creek. Fong and Wang purchased Sunrise Creek for a down payment and a $330,000 note secured by a deed of trust.

When the Sunrise Creek note came due, Fong gave Wang the $330,000 needed to pay off the note. Wang failed to make the payment, and instead spent the money. Wang arranged an extension on the note, but when the note eventually came due, Wang again failed to make the payment. Facing foreclosure, Wang told Fong he and Group Management were partners in Oakdale. According to Wang, Oakdale owed Wang over $200,000. Wang assigned to Fong the money he claimed Oakdale owed him. Wang also told Fong about the $370,000 note held by Oakdale, and assured Fong that he had authority to sell the note. According to Wang's domino-like theory, if Oakdale sold the note, Oakdale could repay Wang and Wang could repay Fong, who in turn could pay off the Sunrise Creek note.

Fong introduced Wang to his daughter and son-in-law, the Burrises, who purchased the $370,000 note for the fair market value of $295,000. Two

Oakdale partners, Stanley Quon and Franklin Chinn, signed the irrevocable escrow instructions authorizing the sale of the note. Wang and Fong opened an escrow account with Stewart Title. $200,000 of the proceeds from the sale of the Oakdale note was transferred into the escrow account, and later used to pay off the Sunrise Creek note. Oakdale owed no money to Fong; the debt repaid was the personal debt of Wang.

Oakdale filed suit against Fong, Stewart Title and the Burrises alleging conversion and conspiracy in the purchase of the note, and seeking imposition of a constructive trust.[1] Oakdale did not sue Wang, who had declared bankruptcy.

In the trial court, the matter was submitted upon the parties' offers of proof and trial briefs. The trial court entered judgment for Fong.

Oakdale moved for a new trial. Following extensive oral argument, the court reaffirmed its judgment in favor of Fong. The court held "by reason of the [Oakdale] partnership agreement, Kenneth Wang had actual and ostensible authority to sell the . . . note and no conversion occurred by reason of the sale or disbursement in the escrows involved in this case . . . ."

Oakdale filed a timely notice of appeal.

DISCUSSION

I.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

II.

Oakdale argues no evidence exists to show Wang had actual authority to use partnership assets to pay his personal debt to Fong. Although Oakdale agrees Oakdale's statement of partnership gave Wang authority to convey title to real property standing in the partnership name, Oakdale contends this authority does not allow Wang to disburse the proceeds for a nonpartnership purpose. The disbursement, according to Oakdale, amounted to conversion.

Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or

---

[1] Stewart Title filed a motion for summary judgment, which the trial court granted. We affirmed the court's judgment. We found the title company acted only as a conduit during the transaction, and therefore could not be liable for conversion.

*See footnote, *ante*, page 539.

right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use. (*Messerall* v. *Fulwider* (1988) 199 Cal.App.3d 1324, 1329 [245 Cal.Rptr. 548]; *Enterprise Leasing Corp.* v. *Shugart Corp.* (1991) 231 Cal.App.3d 737, 747 [282 Cal.Rptr. 620].)

Conversion is also a strict liability tort. " ' "The foundation for the action for conversion rests neither in the knowledge nor the intent of the defendant. . . . [Instead], 'the tort consists in the breach of what may be called an absolute duty; the act itself . . . is unlawful and redressible as a tort.' " ' . . ." (*Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 144, fn. 38 [271 Cal.Rptr. 146, 793 P.2d 479].) Therefore, questions of good faith, lack of knowledge and motive are ordinarily immaterial.

The trial court held Wang had actual and ostensible authority to sell the note and disburse the proceeds and thus could not be liable to Oakdale for conversion. Accordingly, Fong could not be liable. We disagree.

The third amended statement of partnership states: "Kenneth Wang and Group Management, Inc. may convey (as defined in Section 15010.5 (2) of the California Corporations Code) title to real property standing in the partnership name by a conveyance executed in the partnership name." Corporations Code section 15010.5, subdivision (2) states: "As used in this section and Section 15010, 'conveyance' includes every instrument in writing by which any estate or interest in real estate is created, alienated, mortgaged or encumbered, or by which the title to any real property may be affected, except wills; 'convey' includes the execution of any such instrument; and 'purchaser' includes any person acquiring an interest under any such instrument."

The note sold by Wang to the Burrises was secured by a deed of trust on real property, the deed to the shopping center. Corporations Code section 15010.5, subdivision (2) includes "every instrument in writing by which any . . . interest in real estate is . . . encumbered." The statement of partnership authorizes Wang to convey title to real property by "a conveyance executed in the partnership name." Such authorization includes the sale of the note by Wang.

However, Wang also transferred $200,000 into an escrow account to repay his debt to Fong. The Oakdale Partnership Agreement is devoid of any

language to support the use of partnership assets to pay a partner's personal debt. The partnership agreement, under the heading "Limitations on the Powers of Partners" states, "No partner or manager, without prior written consent or ratifications of all the partners, shall have authority to: . . . (2) Do any act which would make it impossible to carry on the ordinary business of the partnership. . . . (4) Possess partnership property for other than a partnership purpose." This prohibition bars the use of partnership assets for a nonpartnership purpose absent the consent of all the partners. There is no evidence Wang *even informed* his fellow partners of the disbursement to Fong. "It may be presumed that the typical partnership agreement will hardly ever contain a provision authorizing misappropriation of partnership funds by a general partner." (*Kazanjian* v. *Rancho Estates, Ltd.* (1991) 235 Cal.App.3d 1621, 1626 [1 Cal.Rptr.2d 534].) While the statement of partnership gave Wang authority to sell the note, it did not authorize him to convert the sales proceeds from the partnership. Therefore, we find no support in the statement of partnership to shield Wang from a cause of action for conversion.

The trial court, in finding no conversion, reasoned since a partner has an ownership share of the partnership property, a partner cannot convert what he partly owns. Though we appreciate the logic underlying the court's decision, we reject it in favor of the rationale set forth in *People* v. *Sobiek* (1973) 30 Cal.App.3d 458 [106 Cal.Rptr. 519, 82 A.L.R.3d 804]. The court in *Sobiek,* in holding a partner may be held liable for embezzlement of partnership funds, examined at length prior case law to the contrary. The court traced the rule's history to states whose statutes omitted the category of partner from a list of persons who could be guilty of embezzlement. (*Id.* at p. 463.) The underlying rationale for the rule was the theory that since each partner is the owner of an undivided interest in all of the partnership property, and since no one can be guilty of stealing what belongs to him, a partner cannot be convicted of embezzling or stealing partnership property. For theft to occur the property must be "of another." (*Id.* at p. 464.) In this formulation, the rule requires not only that the property be "of another," but that it must be "wholly of another." (*Ibid.*)

The *Sobiek* court opined that in interpreting California criminal statutes it was "totally inappropriate" to adopt a judicial rule requiring that the stolen property be *wholly* of another. (30 Cal.App.3d at p. 464.) The court noted the rule was mere dictum in many early cases and had been soundly criticized and rejected by the American Law Institute and in the Model Penal Code. (*Id.* at pp. 464-466.) Finally, the court reasoned that allowing prosecution of embezzling partners was consistent with the trend of the law recognizing partnerships as separate legal entities and not merely an aggregate of individuals. We agree with *Sobiek*: "It is both illogical and unreasonable to hold

that a partner cannot steal from his partners merely because he has an undivided interest in the partnership property. Fundamentally, stealing that portion of the partners' shares which does not belong to the thief is no different from stealing the property of any other person." (*Id.* at p. 468.)

While the trial court distinguished *Sobiek* as a criminal prosecution, we find the reasoning of *Sobiek* applicable in the civil context, and see no reason to permit a partner to escape civil liability when he or she absconds with partnership property. *Sobiek*'s theoretical underpinnings, which treat the partnership as a separate legal entity, also support a finding of damage to the partnership when a partner misbehaves and steals partnership assets. (See also Note, *People* v. *Sobiek: Punishing the Embezzling Partner* (1974) 25 Hastings L.J. 1266.)

Wang, in violation of the partnership agreement, used partnership assets without authorization to repay a personal debt. Applying the rule of *People* v. *Sobiek*, *supra*, 30 Cal.App.3d 458, Wang can be held liable for conversion of partnership property. One is not permitted to rob Peter in order to pay Paul, even if "Peter" is a partnership. In this we disagree with the trial court's conclusion that no conversion took place.

In declining to extend the logic of *Sobiek*, the trial court declared it was disturbed by the prospect of imposing liability on an innocent party, Fong, for receiving funds converted by Wang. We share the trial court's discomfort. However, we do not find Fong automatically liable for conversion stemming from his receipt of converted funds. ■ "Although there are many cases in which a person who obtains possession of goods by fraud is regarded as liable for conversion thereof, it does not follow that every other person into whose hands the goods have come may be sued for conversion. Thus, it is a general rule that an innocent purchaser for value and without notice, actual or constructive, that his vendor had secured the goods by a fraudulent purchase, is not liable for conversion. [¶] A different result has been reached, however, where the goods are taken from the fraudulent possessor with knowledge of the fraud, or with knowledge of such facts and circumstances as would have put cautious and prudent men on inquiry, even though full value has been paid for the property, or where, in general, the transactions involved do not operate to transfer the title to the goods." (7 Speiser et al., The American Law of Torts (1990) § 24.8, pp. 729-730, fns. omitted; see also 1 Harper et al., The Law of Torts (2d ed. 1986) § 2.16, pp. 189-190; Prosser & Keeton, Torts (5th ed. 1984) § 15, p. 94.)

■ During argument, the trial court in the present case voiced concern in the inequity of finding "an innocent person" liable for conversion for

doing business with a miscreant partner. The court described Fong's activities as "[a]n unwitting taking of the personal property of another." According to the court, Fong lacked any intent to convert partnership property. In the court's analysis, this was an open business transaction: Fong asked Wang to repay his debt, Wang repaid the money he owed Fong. The court concluded, "I just don't think a commercial transaction, in the ordinary course of a commercial transaction, we can subject persons like those standing in the shoes of Fong to the kind of risks here. All kinds of risks with substantial investments. The money could have been used to have made substantial commitments to the other persons in the commercial scene, and you would have a house of cards that would tumble. Is everybody else liable for conversion down the line to say that Fong promised that money to them? When he paid his creditors with it, are they liable for conversion? Is it an unending stream of crashing blocks?"

The trial court, in effect, found Fong an "innocent purchaser for value and without notice, actual or constructive, that his vendor had secured the goods by a fraudulent purchase." (7 Speiser et al., The American Law of Torts, *supra*, § 24.8, pp. 729-730.) ■ On appeal, we review the trial court's ruling, not the reasons given for it. If the ruling is correct, it will be affirmed even if it was reached by a mistaken line of reasoning. (*Franklin* v. *Appel* (1992) 8 Cal.App.4th 875, 893 [10 Cal.Rptr.2d 759].)

■ Under the court's analysis, Wang misappropriated over $300,000 from Fong. When Fong demanded repayment, Wang told Fong Oakdale owed him over $200,000. He also told Fong he had the power to sell Oakdale's note. The proceeds, Wang stated, represented what Oakdale owed him, and he could then repay Fong. Fong innocently believed Wang had the authority to repay his debt with the proceeds from the sale of the note.

As pointed out by Oakdale, there are two problems to this analysis. First, Fong is not a purchaser for value, and second, Fong had constructive notice that Quon and Chinn were partners in Oakdale.

■ The elements of a bona fide purchase are payment of value, in good faith and without actual or constructive notice of another's rights. Absence of notice is an essential requirement in order that one may be regarded as a bona fide purchaser. (*Gates Rubber Co.* v. *Ulman* (1989) 214 Cal.App.3d 356, 364 [262 Cal.Rptr. 630].)

■ Here, the only "value" given by Fong in exchange for the proceeds of the note, was Fong's forgiveness of Wang's misappropriation of $330,000 Fong gave Wang to pay off the Sunrise Creek note. This does not constitute

payment of value. In *Bank of Ukiah* v. *Gibson* (1895) 109 Cal. 197 [41 P. 1008], defendant Drew purchased sheep from defendant Weldon, who knowingly purchased them from a seller who did not have title to the livestock. Drew had no knowledge of Weldon's defective title. Drew gave Weldon a promissory note, which had never been paid. (*Id.* at pp. 199-200.)

The Supreme Court rejected Drew's claim that she was a bona fide purchaser holding: "This state of facts is fatal to her claim of title, for upon such facts she was not a *bona fide* purchaser for a valuable consideration. While it may be said that she was a *bona fide* purchaser in a limited sense, that is, she was free from fraud and bought without notice, still she parted with no valuable consideration. She has lost nothing by the transaction, and is in no worse position than though Weldon had made her a present of the sheep. The consideration for her contract having failed, she has a complete defense to any recovery upon the note by Weldon. If the note had been negotiated, and was in the hands of an innocent third party, the case would assume an entirely different form, for an irrevocable obligation would then be outstanding against her, but such is not the fact as disclosed by this record. Mr. Pomeroy, in his work upon Equity Jurisprudence, section 751, says: 'It is further settled that there must be *actual payment* before any notice, or what in law is tantamount to actual payment, a transfer of property or things in action, or an absolute change of the purchaser's legal position for the worse, or the assumption by him of some new, irrevocable, legal obligation. It follows, therefore, that his own promise, contract, bond, covenant, bond and mortgage, or other non-negotiable security for the price, will not render the party a *bona fide* purchaser, nor entitle him to protection; for, upon failure of the consideration, he can be relieved from such obligations in equity, even if not at law.' " (*Bank of Ukiah* v. *Gibson, supra*, 109 Cal. at p. 200, italics in original.)

Here, Fong promised to forgive Wang's misappropriation of the funds earmarked for the Sunrise Creek note in exchange for the funds Wang converted from the partnership. This promise is not an exchange for value necessary to make Fong a bona fide purchaser. As with the purchase of the sheep in *Bank of Ukiah* v. *Gibson, supra*, 109 Cal. 197, Fong has lost nothing by the transaction. Although Fong released Wang from his obligation to repay him the misappropriated funds intended to pay off the Sunrise Creek note, the consideration for his forgiveness of that obligation has failed, i.e., the money from the sale of Oakdale's note was not Wang's to disburse on his own account. Accordingly, the status quo ante, which includes Fong's right of action against Wang, is restored and Fong is in no worse position than if Wang had bestowed upon him the ill-gotten proceeds of the sale of Oakdale's note as a gift.

Nor can we find Fong received the converted funds without actual or constructive notice. Fong, in his offer of proof states: "Ken Wang represented to Daniel Fong that he and Group Management, Inc. were the *only* partners of Oakdale Village, and that Oakdale Village owed him substantial sums for monies advanced, and that if a buyer could be found for the promissory note that he had the power and authority to sell the note, and that if he could sell it, he could then pay off the note secured by the Sunrise Creek property." (Italics added.) The offer of proof also states, "Until the filing of the within action, Daniel Fong had no *actual knowledge* of the fact that Stanley Quon and Dr. Franklin Chinn were partners in Oakdale Village." (Italics added.)

However, Fong had constructive knowledge of the third amended partnership agreement, signed by Quon and Chinn as partners. In his offer of proof, Fong cites the third amended partnership agreement, filed five months prior to the sale of the Oakdale note, as support for his belief that Wang had authority to sell the note. Therefore, Fong had constructive knowledge of partners other than Wang and Group Management. This constructive knowledge of other partners involved in the transaction provided Fong with knowledge of facts and circumstances sufficient to put a prudent purchaser on inquiry. To be an innocent purchaser, the buyer must purchase without actual *or* constructive notice. (See 7 Speiser et al., The American Law of Torts, *supra*, § 24.8, p. 730.) This knowledge defeats any claim by Fong that he was an innocent purchaser. "One who acquires the property from the fraudulent vendee under such circumstances that he cannot be held to be a purchaser in good faith and for a valuable consideration, is in no better position than the fraudulent vendee, and the defrauded party has the same remedies against him that he had against such fraudulent vendee." (*Wendling etc. Co.* v. *Glenwood etc. Co.* (1908) 153 Cal. 411, 414 [95 P 1029].)

Here, the parties submitted the case on the briefs and offers of proof. We must uphold the trial court's decision if it is based on inferences reasonably drawn from the evidence. (*McKinney* v. *Kull* (1981) 118 Cal.App.3d 951, 956 [173 Cal.Rptr. 696].) However, the law regarding conversion is clear: unless one is an innocent purchaser for value and without notice, one who accepts goods from a fraudulent possessor is also liable for conversion. The facts before us permit only one inference under the law: Fong was not an innocent purchaser, and exchanged nothing of value for the converted goods. Therefore, we find the trial court erred in holding Fong committed no conversion when he accepted the misappropriated funds from Wang.

We find, as a matter of law, Fong was not an innocent purchaser, and is therefore liable for conversion as recipient of the funds converted by Wang.

We remand to the trial court for entry of judgment in favor of Oakdale on the conversion cause of action.[4]

### DISPOSITION

The judgment is reversed, and the cause is remanded to the trial court for entry of judgment in favor of Oakdale on the cause of action for conversion. Oakdale shall recover costs on appeal.

Puglia, P. J., and Morrison, J., concurred.

A petition for a rehearing was denied April 10, 1996, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied June 19, 1996.

---

[4]Since we find Fong liable for conversion, we do not address Oakdale's contentions concerning its common count for money had and received, and its request for imposition of a constructive trust.