Filed 5/14/14  Regent Alliance v. Rabizadeh CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| REGENT ALLIANCE LTD., | B244652 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC429863) |
| v. | |
| ROUHOLLAH RABIZADEH et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles, Daniel J. Buckley, Judge.  Affirmed.

Daar & Newman, Jeffery J. Daar and Michael R. Newman for Plaintiff and Appellant.

Law Office of Mohammad A. Fakhreddine and Mohammad A. Fakhreddine for Defendants and Respondents.

_____

Regent Alliance Ltd. (Regent) sued three purchasers of children's clothing for conversion, alleging that the purchasers bought, from other defendants, clothing belonging to Regent that those other defendants had converted. The trial court granted the purchasers' motions for summary judgment, and Regent appeals. We affirm.

Regent, a Hong Kong corporation that manufactures children's clothing, filed a first amended complaint in 2010 against multiple defendants, including Rouhollah Rabizadeh, Bahram Dahi, and his wife Farahnaz Dahi[1] (the purchasers), all three doing business as B&R Clothing and Kids Street. The complaint alleged in its 13th, 14th, and 15th causes of action that Rabizadeh, Bahram, and Farahnaz purchased and resold converted property, children's clothing (the clothing) from other defendants (the warehouse defendants) including YHK Transportation, Inc., against which the complaint also alleged conversion. YHK had agreed with Regent to store the clothing in YHK's warehouse facility in Carson, California, but after the clothing was delivered to the warehouse and YHK took possession, YHK transferred the clothing without Regent's knowledge to another defendant's warehouse in Commerce. The warehouse defendants, who "had previously converted the Children's Clothing," then sold it to the purchasers, who subsequently sold the clothing to others.

In May 2012, Rabizadeh, Bahram, and Farahnaz filed separate motions for summary judgment. The three motions are virtually identical, except that Farahnaz's motion stated that she had no involvement in her husband's business or in the purchase of the clothing. Regent filed oppositions.

The trial court granted summary judgment in favor of Rabizadeh, Bahram, and Farahnaz after a hearing on July 25, 2012, adopting its tentative ruling. The court concluded that the evidence and declarations from the purchasers "meets the initial burden to show that they purchased the clothing under circumstances that did not indicate to a prudent person that the clothing had been stolen," negating an essential element of

---

[1] For ease of reference, we refer to the Dahis as Bahram and Farahnaz, intending no disrespect.

Regent's case. Nothing Regent had presented in opposition was material or reasonably created a different inference, and so there was no disputed question of material fact. Regent timely appealed from the judgment.

We review de novo the trial court's grant of summary judgment by identifying the issues raised by the pleadings, determining whether the purchasers showed that Regent could not prevail on its claim of conversion, and considering whether Regent's opposition raised triable issues of fact. (*Barber v. Chang* (2007) 151 Cal.App.4th 1456, 1462–1463.)

Regent argues that the trial court did not properly apply the law of conversion, insisting that it is "completely irrelevant" whether the purchasers had actual or constructive notice that the warehouse defendants did not have the right to sell the clothing. Regent is wrong; the trial court properly applied the law.

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use. [Citations.]" (*Oakdale Village Group v. Fong* (1996) 43 Cal.App.4th 539, 543–544.) Conversion is generally a strict liability tort in which "questions of good faith, lack of knowledge and motive are ordinarily immaterial." (*Id.* at p. 544.) Nevertheless, where an individual receives funds already converted *by another*, he or she is not automatically liable for conversion. (*Id.* at p. 546.) "'Thus, it is a general rule that an innocent purchaser for value and without notice, actual or constructive, that his vendor had secured the goods by a fraudulent purchase, is not liable for conversion. [¶] A different result has been reached, however, where the goods are taken from the fraudulent possessor with knowledge of the fraud, or with knowledge of such facts and circumstances as would have put cautious and prudent men on inquiry . . . .'" (*Ibid.*) Where the defendant was not a purchaser for value, and where he had constructive knowledge of the rights of

3

another, he is not an innocent purchaser and "'is in no better possession than the fraudulent vendee, and the defrauded party has the same remedies against him that he had against such fraudulent vendee.' [Citation.]" (*Id.* at p. 549.) Therefore, "[i]n cases where the property changes possession more than once, a plaintiff has a cause of action for conversion *if the defendant who is sued for conversion took the property from another converter, and took it with actual or constructive notice that the prior conversion took place.* [Citation.]" (*Irving Nelkin & Co. v. South Beverly Hills Wilshire Jewelry & Loan* (2005) 129 Cal.App.4th 692, 699, italics added.) "Under these rules, a purchaser of stolen property with actual or constructive notice of the true owner's interests in that property cannot prevail against that owner. [Citations.]" (*DVD Copy Control Assn. v. Bunner* (2003) 31 Cal.4th 864, 882.)

Here, the purchasers took the goods from another converter, the warehouse defendants, who Regent alleged had already converted the clothing. The trial judge was therefore correct to consider whether Rabizadeh, Bahram, and Farahnaz were bona fide purchasers, without actual or constructive knowledge that the prior conversion by the warehouse defendants took place. The trial court was right on the law.

Regent also argues that there were triable issues of fact regarding whether the purchasers had constructive notice that the warehouse defendants had themselves converted the clothing and therefore had no right to sell it. According to Regent, the purchasers "should have been suspicious" that the transaction was "shady" because the purchasers paid primarily cash, some of it in bags, and continued to pay after they did not receive all the clothing they ordered. The evidence as to the purchasers' payment method, however, does not reasonably raise a triable issue of fact as to whether the purchasers knew the warehouse defendants had converted the clothing. It was undisputed that the purchasers received invoices for their purchases and that an agent acknowledged in writing receipt of their advance payments. Regent does not identify any evidence that the use of cash alone was unusual or raised an issue whether the purchasers believed the warehouse defendants had the right to sell the clothing, and there was deposition

testimony that the use of cash in the closeout business was common. Further, continuing to pay before the order was complete indicates trust, rather than distrust, of the sellers.

Regent points to Rabizadeh's deposition testimony as evidence that he did not trust Mansour Haghighi, who with Behrooz Dadbin was one of the two agents involved in the sales. Rabizadeh, however, stated only that he did not know Haghighi, and so gave the cash to Dadbin, whom he and Bahram trusted. Bahram testified that he thought an employee of the warehouse defendants was untrustworthy because of the way he treated people. This is not evidence that raises an issue whether the warehouse defendants had the right to make the sale. And although Regent emphasizes that Haghighi likened the same warehouse employee to "Al Capone," the deposition testimony Regent cites shows that Haghighi stated that at the time of the transactions he did trust the employee ("otherwise, why would I give him the money?") and his mistrust arose only after Regent filed the lawsuit. In any event, any distrust on the part of the agent, Haghighi, cannot establish the purchasers' knowledge of a prior conversion.

The trial court did not err in granting summary judgment.

## DISPOSITION

The judgment is affirmed. Costs are awarded to respondents.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, Acting P. J.


CHANEY, J.

5