[No. D045238. Fourth Dist., Div. One. May 26, 2006.]

GARY BONNER et al., Plaintiffs and Appellants, v.
COUNTY OF SAN DIEGO et al., Defendants and Respondents.

1338

---

---

COUNSEL

Law Offices of Michael A. Conger, Michael A. Conger and Richard H. Benes for Plaintiffs and Appellants.

Duckor Spradling Metzger & Wynne, Scott L. Metzger, Robert M. Shaughnessy and Kevin L. Wheeler for Defendant and Respondent San Diego County Employees' Retirement Association.

John J. Sansone, County Counsel, and William A. Johnson, Jr., Deputy County Counsel, for Defendant and Respondent County of San Diego.

---

OPINION

**BENKE, Acting P. J.—**

## INTRODUCTION

The County Employees Retirement Law of 1937 (the CERL) (Gov. Code,[1] § 31450) establishes retirement allowances for persons classified as "general members" (see § 31670 et seq.) and more generous retirement allowances for persons classified as "safety members" (see § 31662 et seq.). Although safety members receive more generous benefits, they must contribute to their county retirement systems at a higher rate than general members. (Compare § 31620 et seq. with § 31639 et seq.)

Section 31469.4 defines safety members to include "persons employed as probation officers," but provides, "The provisions of this section shall not be applicable in any county until the board of supervisors by resolution make the provisions applicable." When a county adopts the provisions of section 31469.4, the employees affected must elect, within one year, to be treated as safety officers. (§ 31558.6.) When by amendment to the CERL the definition

---

[1] All further statutory references are to the Government Code unless otherwise specified.

of safety members is expanded, affected employees may also elect to have their previous service treated as service of a safety member. (§ 31639.7.) However, the employees must make this election at the time they elect to be treated as safety members and arrange to contribute the difference between their prior contributions and the higher contributions required of safety members plus interest. (§ 31639.7.)

Following a collective bargaining agreement with its probation officers, defendant and respondent County of San Diego (the County) made section 31469.4 applicable in San Diego as of January 1, 1999, and by virtue of the collecting bargaining agreement, then-current probation officers elected to become safety members of defendant and respondent San Diego County Employees' Retirement Association (the Association).

Plaintiffs and appellants Gary Bonner, Jeffrey Flynn and Merrie L. Birkenbach (collectively, appellants) are former probation officers, each of whom ceased being a County employee prior to January 1, 1999. At the time they left County employment, each of the appellants was eligible to leave their "accumulated contributions in the [County's] retirement fund and be granted a deferred retirement allowance," which they could begin to collect at the time they could have retired if they had remained in county service. (§ 31700.) Each of the appellants elected deferred retirement when they left the County's employ prior to January 1, 1999.

Each of the appellants applied to the Association for a retirement allowance after January 1, 1999. Although they had not elected to have their earlier service treated as safety member service or contributed the difference between their general member contributions and the amount required of safety members, they asserted that they were entitled to the benefit of the County's adoption of section 31469.4. They relied on section 31705 which provides that persons on deferred retirement are entitled to have their "retirement allowance . . . calculated according to the provisions of [the CERL] as they exist at the time of the commencement of the retirement allowance." (§ 31705.) The Association declined to provide the appellants with safety member allowances.

Appellants filed this action against the County and the Association (collectively, respondents). In their complaint, appellants claimed the Association improperly failed to calculate their retirement benefits in accordance with section 31705.

Respondents filed a motion for summary judgment in which they claimed the Association did not violate section 31705 in calculating appellants' retirement allowances because appellants were not entitled to be reclassified

from general to safety members, since they were not County employees at the time section 31469.4 became applicable in the County. The trial court granted respondents' motion for summary judgment and subsequently entered judgment in favor of respondents.

We affirm. Although the CERL allows certain employees who are leaving County service to elect deferred retirement, the CERL does not give them the right to make any further elections which may thereafter be afforded County employees.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants are former probation officers in the County who left County employment prior to January 1, 1999. Upon leaving County service, each appellant elected deferred retirement from the County and became employed with another public agency within the CERL system.[2] In December 1998 the San Diego County Board of Supervisors passed a resolution that provides in pertinent part: "IT IS RESOLVED that the Board of Supervisors of the County of San Diego hereby determines that effective January 1, 1999, the provisions of Government Code section 31469.4 [defining safety members to include 'persons employed as probation officers'] are applicable in the County of San Diego." As the County notes, this resolution was adopted as a part of a collective bargaining process between the County and the San Diego County Probation Officers Association (the Union). The County and the Union had agreed that probation officers would have safety member status prospectively and could purchase, on a revenue neutral basis, credit for past safety service.[3]

In March 2002 Bonner and Flynn each retired and began receiving retirement benefits from the Association.[4] In March 2003 appellants brought an action against respondents,[5] seeking declaratory and injunctive relief. Appellants sought, among other forms of relief: (1) a judicial determination that respondents had violated section 31705 by calculating appellants' retirement benefits under provisions of the CERL that were in effect at the time

---

[2] Section 31831 authorizes members who leave County service for employment with another entity with a retirement system established under the CERL to take deferred retirement from the County.

[3] We have taken judicial notice of the collective bargaining agreement and correlative provisions of the Association's by-laws solely for the purpose of recognizing the context in which the County adopted section 31694.4. (Evid. Code, § 452, subd. (c).) We have made no determination with respect to what rights or obligations arose under the agreement.

[4] Birkenbach elected deferred retirement from the County prior to January 1, 1999, but had not retired as of the time the motion for summary judgment was filed in the trial court.

[5] In June 2003 appellants voluntarily dismissed the County from this case, without prejudice. Shortly thereafter, the court granted the parties' stipulation to allow the County to intervene in this action as a defendant.

they went on deferred status, rather than according to the provisions of the CERL as they existed at the time payment of appellants' retirement allowances commenced; and (2) an injunction prohibiting respondents from making such incorrect calculations in the future.

In November 2003 respondents filed a joint motion for summary judgment on the ground that section 31469.4 did not apply to appellants because they were not employed as safety members on the date section 31469.4 became applicable in the County. Appellants opposed the motion. After oral argument, the trial court granted respondents' motion for summary judgment and entered judgment in their favor. Appellants filed a timely notice of appeal.

## DISCUSSION

Appellants claim that although they were not County employees as of the date section 31469.4[6] became applicable in the County, they are entitled to receive safety member allowances from the Association when they retired. In particular, appellants claim that section 31639.7[7] requires that the Association allow them to purchase safety member credit for service performed prior to the effective date of section 31469.4 in the County.[8] Accordingly, appellants claim the trial court erred in granting respondents' motion for summary judgment.

---

[6] Section 31469.4 provides: " 'Safety member' means persons employed as probation officers, juvenile hall or juvenile home group counselors, and group supervisors who are primarily engaged in the control and custody of delinquent youths who must be detained under physical security in order not to be harmful to themselves or others. [¶] The provisions of this section shall not be applicable in any county until the board of supervisors by resolution make the provisions applicable."

[7] Section 31639.7 provides: "If a member not previously within the field of membership as a safety member is brought within such field of safety membership by amendment to this chapter, he may receive credit as a safety member for all or any part of the time during which his duties would have made him eligible to become a safety member if such amendment had then been in effect by filing with the board at the time he elects to become a safety member his election to pay into the retirement fund an amount equal to the difference between the contributions actually made during the time for which he claims credit and the contributions he would have made during such time, including all additional contributions, if any, required by Article 7.5 of this chapter, had he been a safety member, together with regular interest on the amount required to be deposited."

[8] We reject the Association's argument that appellants are barred from relying on section 31639.7 because appellants did not cite that section in their pleadings. Appellants' complaint claimed the Association violated section 31705 by failing to calculate their retirement allowances in accordance with the CERL as it existed at the time of the commencement of such allowances and cited and quoted section 31705 in their complaint. Appellants were not required to cite in the complaint all statutes within the CERL that are relevant to this claim. To the extent the Association was uncertain as to the basis of the claimed violation, it could have

I

*Standard of Review*

"Pursuant to Code of Civil Procedure section 437c, subdivision (c), summary judgment is proper where the papers submitted demonstrate that there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law." (*Barbee v. Household Automotive Finance Corp.* (2003) 113 Cal.App.4th 525, 530 [6 Cal.Rptr.3d 406].) "[I]t is well settled that on appeal following summary judgment the trial court's reasoning is irrelevant, and the matter is reviewed on appeal de novo." (*Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 140 [29 Cal.Rptr.3d 553].)

II

*General Principles of Statutory Interpretation*

■ "In construing any statute, '[w]ell-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' [Citation.] 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.' [Citation.]" (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 484–485 [17 Cal.Rptr.3d 88] (*Whaley*).)

■ We also recognize that "[a]ny ambiguity or uncertainty in the meaning of pension legislation must be resolved in favor of the pensioner, but such construction must be consistent with the clear language and purpose of the statute." (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 490 [66 Cal.Rptr.2d 304, 940 P.2d 891].)

■ Finally, as we explain more fully below, of some import here is the rule of statutory construction that "a later, more specific statute controls over an

demurred on this ground. It did not do so. In addition, appellants claimed in their opposition to the Association's motion for summary judgment that they were entitled to make contributions pursuant to section 31639.7. Thus, appellants clearly have not forfeited reliance on section 31639.7.

In light of our conclusion, we deny appellants' motion that we disregard a portion of the Association's brief arguing that appellants are barred from relying on section 31639.7.

earlier, general statute." (*Woods v. Young* (1991) 53 Cal.3d 315, 324 [279 Cal.Rptr. 613, 807 P.2d 455].)

## III

### *Section 31469.4 Is a Later, More Specific Statute*

■ By its terms the safety member classification provided to probation officers and other employees by section 31469.4 is "not . . . applicable in any county *until* the board of supervisors by resolution make the provisions applicable." (Italics added.) Read in isolation, section 31469.4 is strictly prospective and provides no enhancement with respect to prior service. It applies solely to those who are *employed* by a county at the time it is adopted by the County. In contrast, section 31705 provides that the retirement allowance of deferred retirees be calculated according to "the provisions of this chapter as they exist at the time of the commencement of the retirement allowance." Because section 31705 only impacts the prior service of deferred employees, in its application section 31705 is entirely retrospective.

■ Here, where a deferred retiree argues he is entitled to the benefits of section 31469.4, the challenge we face is largely a matter of harmonizing the prospective terms of section 31469.4 and the retrospective application of section 31705. In meeting this analytical challenge we are assisted by the statutory rule which gives precedence to a later, more specific enactment over an earlier, general provision. (See *Woods v. Young, supra,* 53 Cal.3d at p. 324.) In this regard we note that section 31705 is part of article 9 of the CERL, which sets forth a County employee's right to defer retirement. Article 9 provides the right to defer retirement to "[a]ny *member*, whether over or under the minimum age of voluntary service retirement, who leaves county service after completing five years of service or who leaves service and within 90 days . . . becomes a member of the Public Employees' Retirement System." (§ 31700, italics added.) Article 9, including the retro-spective provisions of section 31705, was enacted in 1947. (Stats. 1947, ch. 424, § 1, p. 1279.) Section 31469.4 applies only to "probation officers, juvenile hall or juvenile home group counselors, and group supervisors who are primarily engaged in the control and custody of delinquent youths" and only in counties where it has been adopted by the board of supervisors. Section 31469.4 was enacted in 1969. (Stats. 1969, ch. 1463, § 1, p. 2983.) Plainly, article 9 and section 31705 are provisions of broader and more general application than the far narrower focus of the later provisions of section 31469.4. Thus, our initial and primary focus must be on section 31469.4 and whether its provisions can be interpreted in a manner which extends its benefits to deferred employees.

## IV

### *Supportive Provisions*

As we have noted, under the express terms of section 31469.4 the safety member classification provided by the statute is available to those employed by a county and is "not applicable until" it has been adopted by a county. The most commonsense interpretation of this language is that it is limited to current employees and excludes prior service from classification as safety service. Our consideration of closely related provisions of the CERL confirms this strict interpretation of section 31469.4.

■ Section 31469.4, even when adopted by a board of supervisors, is not self-executing. Section 31558.6 provides in pertinent part that "each person *who is employed* in a position, the principal duties of which consist of juvenile hall group counseling and group supervisor as defined in Section 31469.4 on the date the provisions of Section 31469.4 are made applicable in a county . . . and *who files with the board written election* to become a safety member on or prior to one year after Section 31469.4 are made applicable in a county by the board of supervisors, *shall become a safety member*."[9] (Italics added.)

---

[9] We have taken judicial notice of the legislative history of section 31558.6 prepared by the Legislative Intent Service and submitted by appellants.

Although section 31558.6 does not mention probation officers, as we interpret the statute it includes all employees covered by section 31469.4. As the County points out, section 31469.4 was enacted in 1969 (Stats. 1969, ch. 1463, § 1, p. 2983) and section 31558.6 was enacted shortly thereafter. (Stats. 1970, ch. 396, § 3, p. 810.) Initially, both sections originally applied only to "juvenile hall group counselors and group supervisors." However, section 31469.4 was amended in 1971 to allow counties to include two additional groups within the definition of safety members, to wit: probation officers and juvenile group counselors/supervisors. (Stats. 1971, ch. 107, § 2, p. 143.) Through obvious oversight, section 31558.6 was not similarly amended to provide the same election procedure for probation officers and juvenile group counselors/supervisors. There is simply no rationale under which probation officers and juvenile group counselors/supervisors would be excused from the election requirements of section 31558.6 imposed on juvenile hall group counselors and group supervisors. Indeed, other provisions of the CERL plainly assume section 31558.6's election requirement applies to those employees. Section 31469.5 provides safety membership for probation officers in certain counties and directs that "[n]otwithstanding [s]ection 31558.6," probation officers in these counties must elect safety membership within 120 days from the implementation of section 31469.4.

Although a court's power to effectively rewrite statutes because of drafting errors must be used with great restraint, where as here the error is clear and correction will best carry out the intent of the Legislature, we have the power to do so. (See *People v. Skinner* (1985) 39 Cal.3d 765, 775 [217 Cal.Rptr. 685, 704 P.2d 752] [court found it "clear" that the word "and" was "erroneously used" in place of "or"]; *In re Thierry S.* (1977) 19 Cal.3d 727, 741 [139 Cal.Rptr. 708, 566 P.2d 610] ["obvious mistake" in statute's cross-reference to "Section 625" was corrected to read "Section 2," so as to reflect the Legislature's "clear intent"]; *People v. Troutman* (1921) 187 Cal. 313, 316–317 [201 P. 928] ["evident" drafting error—statute's reference to "Part Two"—corrected to read "Part One" in order to reflect Legislature's intent]; *Washburn v. Lyons* (1893) 97 Cal. 314, 315 [32 P. 310] ["very clear" drafting error—use of "and" instead of "or"—was reformed to reflect Legislature's intent].)

Although by its express terms section 31469.4 prevents retrospective reclassification of a member's service, arguably section 31639.7 provides an express exception to this rule. Under section 31639.7 affected employees may *elect* to have their prior service treated as safety service. However, this election must be made at the same time the employees elect to become safety members and must be in the form of an election to pay into a county's retirement fund the difference between their prior contributions as general members and the contributions that would have been required of them as safety members plus interest. (§ 31639.7.)

■ As the County points out, section 31469.5, subdivision (c)(3), also provides an express exception to the prospective provisions of section 31469.4.[10] Like section 31639.7, it requires an employee to make an election to pay into a covered county's retirement fund the difference between prior general contributions and safety member contributions.

Neither of these exceptions is available to appellants. Appellants did not make an election within the meaning of section 31558.6 and hence could not make an election under the terms of section 31639.7.[11] Section 31469.5 is not available because it does not apply to San Diego County. (See §§ 31469.5, subd. (a), 28020, 28031.)

■ Although they are not available to appellants, the Legislature's provision for these express exceptions is helpful. The provision of an exception to a general rule strongly suggests that other exceptions to the rule are not intended. "The statutory construction doctrine of *expressio unius est exclusio alterius* means ' "the expression of certain things in a statute necessarily involves exclusion of other things not expressed." ' " (*United Farm Workers of America v. Agricultural Labor Relations Bd.* (1995) 41 Cal.App.4th 303, 316 [48 Cal.Rptr.2d 696].) ■ " '[W]here exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed.' " (*Mutual Life Ins. Co. v. City of Los Angeles* (1990) 50 Cal.3d 402,

---

[10] Section 31469.5 provides in pertinent part: "(c) Except as otherwise provided in this section, the retirement benefits of existing probation officers who elect to transfer from general membership in the county retirement system to safety membership shall be implemented pursuant to Section 31484.5, except that: [¶] . . . [¶] (3) An employee who elects safety retirement under Section 31469.4 may elect to receive credit as a safety member for all or part of the time during which his or her duties would have made him or her eligible to become a safety member if this section had then been in effect as provided in Section 31639.7, except that an election to receive part credit may be exercised only in multiples of five years of service. A member who elects to receive credit for only a part of that county service shall elect that county service latest in time and may not receive credit for any portion of county service prior in time to any county service for which he or she does not elect to receive credit."

[11] Because appellants rely upon section 31639.7, we have assumed, without deciding, that adoption of section 31469.4 by the County was as amendment to the CERL for purposes of applying section 31639.7. We note, however, that in enacting section 31469.5, subdivision (c)(3), the Legislature appears to have made this assumption.

410 [267 Cal.Rptr. 589, 787 P.2d 996].) Here, although there are exceptions to prospective application of section 31469.4 for employees who file an election, there is no express provision of the CERL which permits deferred retirees to obtain such a retrospective reclassification at the time they commence collecting a retirement allowance. In particular, as we explain more fully below, there is no such exception in section 31705.

V

*Section 31705 Applies to the Calculation of Retirement Allowances and Not to the Reclassification of Deferred Members from General Members to Safety Members*

A. *The text of section 31705 provides that the calculation of a deferred member's retirement allowance—but not his eligibility for safety member status—is provided by the version of the CERL in effect at the time of the commencement of the member's retirement allowance.*

Section 31705 prescribes the version of the CERL to be applied in calculating the retirement allowance of a person on deferred retirement: "The retirement allowance shall be calculated according to the provisions of this chapter as they exist at the time of the commencement of the retirement allowance."

Section 31664 provides a mathematical formula for calculating a safety member's retirement allowance. That section provides in relevant part: "Notwithstanding any other provisions of this chapter, the current service pension or the current service pension combined with the prior service pension is an additional pension for safety members purchased by the contributions of the county or district sufficient when added to the service retirement annuity to equal the fraction of one-fiftieth of the member's final compensation set forth opposite his or her age at retirement taken to the preceding completed quarter year in the following table, multiplied by the number of years of current service or years of current and prior service with which the member is entitled to be credited at retirement, but in no event shall the total retirement allowance exceed the limitation of the safety

member's final compensation as set forth in Section 31676.1 as it now reads or may hereafter be amended to read:

| "Age at retirement | Fraction |
| --- | --- |
| " 41 | .6258 |
| " 41-1/4 | .6350 [¶] . . . [¶] |
| " 55 and over | 1.3099"[12] |

Similarly, section 31676.1 provides a mathematical formula for calculating a general member's retirement allowance. It provides in relevant part: "This section may be made applicable in any county on the first day of the month after the board of supervisors of such county adopts, by majority vote, a resolution providing that this section shall become applicable in such county. Notwithstanding any other provisions of this chapter the current service pension or the current service pension combined with the prior service pension is an additional pension for members purchased by the contributions of the county or district sufficient, when added to the service retirement annuity, to equal the fraction of one-sixtieth of the member's final compensation set forth opposite the member's age at retirement, taken to the preceding completed quarter year, in the following table multiplied by the number of years of current service or years of current and prior service with which the member is entitled to be credited at retirement, but in no event shall the total retirement allowance exceed the member's final compensation.

| "Age of retirement | Fraction |
| --- | --- |
| " 50 | .7091 |
| " 50-1/4 | .7183 [¶] . . . [¶] |
| " 65 and over | 1.4593"[13] |

In determining the scope of section 31705, we begin by noting that the statute provides that a deferred member's retirement allowance shall be "calculated" by the version of the CERL that exists when the member begins to receive a retirement allowance.[14] "Calculate" means "to determine by mathematical processes." (Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 174.) As noted above, the CERL prescribes various mathematical formulas for calculating a member's retirement allowance. The member's

---

[12] Sections 31664.1 and 31664.2 provide counties with additional optional tables for caluclating safety members' retirement allowances.

[13] As with safety members, the CERL provides counties with a series of optional tables for calculating general members' retirement allowances. (§§ 31676.01–31676.18.)

[14] It is undisputed that the phrase "at the time of the commencement of the retirement allowance," in section 31705, refers to the time at which a member on deferred retirement begins to receive a retirement allowance, rather than the time at which the member initially leaves County employment and takes deferred retirement.

status as either a general or safety member determines which formula is to be used. Section 31705 uses the verb "calculate," which is associated with mathematics, in describing its subject matter. Accordingly, the text of section 31705 suggests that its purpose is to provide that the formula contained in either section 31676.1 or section 31664 (or the local option tables described in fns. 7 and 8, *ante*), that is in effect at the time a member begins to receive his retirement allowance, is to be used in calculating the amount of the member's retirement allowance, absent some other applicable statutory provision prescribing the use of a different formula. The text of section 31705 does *not* indicate that a deferred member's eligibility for safety member benefits is to be determined by changes to the CERL that are made after the member takes deferred retirement.

> B. *Related statutory provisions support the conclusion that section 31705 does not mandate that a deferred member's eligibility for safety member benefits is to be determined by amendments to the CERL that occur after the member takes deferred retirement.*

With respect to general members, there is a separate statutory provision that defines the proper method for calculating the member's retirement allowance when a county has changed the statutory table it uses for calculating such benefits. Section 31678 provides: "Notwithstanding any other provision of this chapter, any member of a retirement association established in any county pursuant to this chapter, who upon retirement receives a retirement allowance calculated in accordance with Sections 31676.1, 31676.11, 31676.12, 31676.13, 31676.14, and 31676.15, shall have his or her retirement allowance calculated under each such section only for the period of time that the section was effective in the county.

"The Legislature recognizes that counties subject to this chapter may adopt two or more of the enumerated retirement allowance calculation sections when changing from a section providing a lesser allowance to a section providing a larger allowance and thereby creates a windfall for a person who retires immediately after the adoption of a section providing the larger allowance because the retirement allowance is calculated as if the section had been in effect during the entire career of the member. The purpose of this section is to prevent this practice. This section shall apply only to persons who become members of the retirement system after January 1, 1981."

 Section 31678 provides the method by which to apply the CERL to a general member who is subject to more than one retirement allowance calculation section of the CERL. The provisions of section 31678 support the conclusion that section 31705 does not require the Association to reclassify appellants as safety members for two reasons. First, the text of section 31678 refers to a member who has his "*retirement allowance calculated* in accordance with Sections 31676.1, 31676.11, 31676.12, 31676.13, 31676.14, and

31676.15" and refers to these sections as *"retirement allowance calculation sections."* (§ 31678, italics added.) Thus, in section 31678, the Legislature used the phrase "retirement allowance calculated" to refer to the process of calculating a member's retirement allowance *within* a particular statutory formula, and not to refer to the determination of *which* statutory formula applies to the member. The Legislature repeatedly uses the phrase "retirement allowance calculated" or a derivation thereof, in related statutory provisions of the CERL to refer to the process of calculating a retirement allowance within a given statutory formula. (See § 31678.2 [referring to a "section of this chapter prescribing a formula for calculation of retirement benefits"]; § 31664.65 [referring to a "retirement allowance calculated pursuant to Section 31644"].) This suggests that the Legislature intended the phrase "retirement allowance shall be calculated" to have that same meaning in section 31705. (See, e.g., *People v. Coker* (2004) 120 Cal.App.4th 581, 588 [15 Cal.Rptr.3d 553] [" ' "To understand the intended meaning of a statutory phrase, we may consider use of the same or similar language in other statutes, because similar words or phrases in statutes in pari materia [that is, dealing with the same subject matter] ordinarily will be given the same interpretation"].) These related statutory provisions support the conclusion that section 31705 provides that the calculation of a deferred member's retirement allowance within a given statutory formula—but not the classification of the member as a general member or safety member—is provided by the version of the CERL that is in effect at the commencement of the member's retirement allowance.

■ Second, section 31678 eliminates the "windfall" many general members would otherwise receive by retiring soon after an increase in benefits was passed, a windfall that would otherwise be expressly authorized for members on deferred retirement pursuant to section 31705. Section 31678 does so by providing that when a county adopts a more favorable formula for calculating retirement benefits for its members, use of the new formula is restricted to service that is rendered *after* the adoption of the formula.[15] It would be anomalous to construe section 31705 to provide members on deferred retirement with a potentially greater windfall, i.e., the reclassification from general to safety member status, given that the Legislature has drastically limited the impact of the broad rule set forth by section 31705 by enacting section 31678.

---

[15] Section 31678.2 provides counties with "the option of applying an improved benefit formula to service credit earned *prior* to the adoption of the formula." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1696 (1999–2000 Reg. Sess.) as amended May 18, 2000, p. 1, italics added.) However, section 31678.2, subdivision (b), also provides that counties may require members to pay for the increased benefits under the circumstances outlined in the statute.

Additional support for our construction of the phrase "retirement allowance shall be calculated" in section 31705 is found by examining the statutes that expressly address the classification of a member as a safety member. These statutes do not refer to such classification as the process of "calculating a member's retirement allowance," but instead use language not found in section 31705. For example, section 31639.7 discusses the manner by which members who are "brought within [the] field of safety membership" may receive credit for service completed prior to an amendment to the CERL reclassifying the member as a safety member. Similarly, section 31470.8 provides: "In cases of doubt as to whether a person is eligible to become a safety member, the board shall decide." Such language is consistent with the conclusion that section 31705 refers only to the calculation of a member's retirement allowance, and not to the member's eligibility to receive safety member benefits. (Cf. § 20968 [distinguishing between the "retirement purposes" of "benefit *eligibility* and *calculations* of retirement allowances"], italics added; see also *In re Marriage of Loh* (2001) 93 Cal.App.4th 325, 337 [112 Cal.Rptr.2d 893] [" '[D]etermining or modifying' are broad words in this statutory context [that] go beyond mere calculation' "].)

 C. *The only published case considering the scope of section 31705 is consistent with our interpretation of the statute and is distinguishable on its facts.*

In *Maffei v. Sacramento County Employees' Retirement System* (2002) 103 Cal.App.4th 993 [127 Cal.Rptr.2d 279] (*Maffei*), the only published case to consider the scope of section 31705, the court considered whether section 31705 required a county to grant a former employee on deferred retirement status the benefit of a statute, enacted after she had taken a deferred retirement with the county, that established reciprocity between the county's retirement system (SCERS) and the retirement system of her current employer (STRS). The *Maffei* court explained that the reciprocity provisions of the CERL allow "an employee to defer retirement in the first job and then retire from both jobs simultaneously and have the retirement allowance for both jobs be based on the employee's highest compensation for either." (*Maffei, supra,* 103 Cal.App.4th at p. 995.) The *Maffei* court further noted that if the member were to receive "reciprocal retirement benefits, her retirement from SCERS will be about $700 more per month than it would be without reciprocal retirement benefits." (*Id.* at p. 996.) The *Maffei* court held: "Government Code section 31705, a part of CERL, provides: 'The retirement allowance shall be calculated according to the provisions of this chapter as they exist at the time of the commencement of the retirement allowance.' Maffei has not begun receiving a retirement allowance from SCERS because, when she resigned her job with the County, she deferred her retirement. When she retires from both SCERS and STRS simultaneously, she will begin receiving a retirement allowance from SCERS. At that time, the retirement

allowance will be calculated according to the provisions of CERL. If, at that point, SCERS and STRS remain reciprocal, as they now are, she will be entitled to the benefit of the reciprocity in determining her retirement allowance." (*Maffei, supra,* 103 Cal.App. 4th at pp. 997–998.)

Although the *Maffei* court did not explain the precise manner in which the application of the CERL reciprocity provisions would increase the member's pension in that case, the court noted that the reciprocity provisions affected how a member's "highest compensation" is measured. (*Maffei, supra,* 103 Cal.App.4th at pp. 995–996.) "Final compensation" is one of the components of the formula for calculating a member's retirement allowance in the CERL. (See §§ 31664 [using "final compensation" as part of the formula for calculating a safety member's retirement allowance], 31676.1 [same with respect to general members].)

The changes in the CERL that were at issue in *Maffei* were essentially changes to the variables contained within the formulas used to calculate a member's retirement allowance. Unlike in *Maffei*, the change in the CERL[16] at issue in this case does not merely alter the manner by which a retirement allowance of a member is calculated within a given statutory formula. Rather, the effect of the adoption of section 31469.4 by the County is to change the *classification* of a group of persons, with the result that their retirement allowances will be calculated using a different statutory formula. Thus, the question presented in *Maffei* is distinguishable from that presented in our case, and the holding of *Maffei* is consistent with our construction of section 31705.

Finally, we note that in *Maffei* the court imprecisely used the term "determined" as a synonym for "calculated" in describing the scope of section 31705: "Government Code section 31705 makes it clear that, as a general proposition, the version of CERL existing at the time of retirement is used to *determine* a member's retirement allowance. Nothing in CERL suggests this general provision concerning *determination* of the retirement allowance does not apply to Maffei's situation. Accordingly, we reject SCERS's argument that Maffei is not entitled to the benefits of reciprocity. Her retirement allowance will be *determined* by applying CERL as it exists when she retires." (*Maffei, supra,* 103 Cal.App.4th at p. 998, italics added.)

■■■ Although perhaps immaterial to the resolution of the issues before the *Maffei* court, we think it significant that the Legislature did *not* state that a deferred member's retirement allowance is to be "determined" by the provisions of the CERL that are in effect at the time of the commencement of the retirement allowance, but instead used the narrower and more precise verb "calculated" in section 31705. (See *In re Marriage of Loh,*

---

[16] See footnote 11, *ante.*

*supra,* 93 Cal.App.4th at p. 337.) As discussed above, the use of the verb "calculate" indicates that the purpose of section 31705 is to provide that the formula contained in either the section 31676.1 sequence of tables (§§ 31676.01–31676.18) or the section 31664 sequence of tables (§§ 31664–31664.2) that is in effect at the time a member begins to receive his retirement allowance is to be used to calculate the member's retirement. Section 31705 does *not* provide that classification of a deferred retiree's prior service "shall be determined" according to the provisions of this chapter as they exist at the time of the commencement of the retirement allowance, and we decline to interpret it as such.

## CONCLUSION

By its terms section 31469.4 applies only to those employed at the time the County adopted that section. It does not authorize retrospective reclassification of prior service and nothing in section 31705 alters application of section 31469.4 according to its express terms. Although other statutes provide express exceptions to the prospective terms of section 31469.4, those exceptions are not available to appellants. Thus, the trial court properly granted respondents' motion for summary judgment.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to costs on appeal.

Nares, J., concurred.

**AARON, J.,** Concurring.—Appellants contend that because Government Code[1] section 31705 provides that the retirement allowances of members on deferred retirement are to be calculated *under the provisions of the County Employees Retirement Law (CERL) as they exist at the time the retirement allowance commences*, and because section 31469.4 was (or, in the case of appellant Birkenbach, will be) applicable in the County at the time appellants' retirement allowances commenced, section 31705 requires that they be deemed safety members for purposes of the calculation of their retirement allowances.[2] Appellants' argument regarding the scope of section 31705 is thus a necessary predicate to their claim for relief in this case.

As noted in section V of the majority opinion, section 31705 provides only that the retirement allowance of a member on deferred retirement is to be *calculated* under the provisions of the CERL as they exist at the time the

---

[1] All statutory references are to the Government Code.

[2] Appellants assert, "Unless there is something in the legislative history of section 31469.4 that reveals an intent to *contravene* the general rule established by section 31705, i.e., an intent to deprive probation officers on 'deferred' status from the benefit of the statute, the plaintiffs are entitled to be classified and treated by [the Association] as 'safety' members."

retirement allowance commences. Section 31705 does not purport to affect the *classification* of members as either general or safety members. The majority's rejection of appellants' argument as to the scope of section 31705 is, in my view, dispositive of appellants' contentions. The discussion of additional provisions of the CERL in other parts of the opinion is unnecessary.

Accordingly, I concur in the result and join in section V of the majority opinion.

A petition for a rehearing was denied June 26, 2006, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied August 16, 2006, S144840.