[No. B225264. Second Dist., Div. Four. Nov. 22, 2010.]

DAWN ARNALL et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ALAN D. LIKER, Real Party in Interest.

**COUNSEL**

Reed Smith, Margaret M. Grignon, Peter J. Kennedy and Judith E. Posner for Petitioners Dawn Arnall and RoDa Drilling.

Buchalter Nemer, Kalley R. Aman and Efrat M. Cogan for Petitioner Ameriquest Mortgage Company.

No appearance for Respondent.

Peter W. James, Thomas D. Warren and Lisa I. Carteen for Real Party in Interest.

**OPINION**

**MANELLA, J.**—In real party in interest Alan D. Liker's action to recover his fees under his service contracts with petitioners, the trial court denied petitioners' motion for summary adjudication. Petitioners seek a writ directing the trial court to vacate the denial of summary adjudication and to enter a new order granting the motion. We grant the petition for writ of mandate.

## FACTUAL AND PROCEDURAL BACKGROUND

There are no material disputes regarding the following facts: Liker is an attorney who specializes in taxation matters and complex business transactions. In December 2005, Liker entered into a service agreement with petitioners Dawn Arnall and Ameriquest Mortgage Company (Ameriquest agreement). The agreement obliged Liker to provide advisory services aimed at minimizing "the adverse economic impact" arising from specified taxable income. Under the fee provisions, Liker was to receive a stipend of $20,000 per month for nine months, and a "[s]uccess [f]ee" amounting to 2 percent of specified reductions in "adverse economic impact" and other "economic savings." In January 2007, the parties modified the Ameriquest agreement. As modified, the agreement acknowledged that Liker had provided services after the original nine-month period; extended the agreement's effective period to December 31, 2009; and permitted Ameriquest and Arnall to end Liker's monthly stipend when he became entitled to a $2 million success fee.

In March 2007, Liker entered into a second service agreement with Arnall and petitioner RoDa Drilling, L.P. (RoDa agreement).[1] Under the agreement, Liker was to provide advisory services in connection with certain oil and gas investments. The agreement provided that Liker was to receive a $20,000 monthly stipend until December 31, 2009 (subject to conditions not relevant here), and a success fee amounting to 1 percent of specified recoveries and sales proceeds.

In June 2009, petitioners terminated Liker's services and averred that the service agreements were void under Business and Professions Code section 6147.[2] On January 28, 2010, Liker filed his first amended complaint against

---

[1] Also party to the agreement was Roland Arnall, who is deceased.

[2] All further statutory citations are to the Business and Professions Code, unless otherwise indicated.

petitioners, asserting a claim for breach of the RoDa agreement, and claims for breach of the implied covenant of good faith and fair dealing, recovery in quantum meruit, and declaratory relief regarding the Ameriquest and RoDa agreements. The complaint alleged that when Liker requested his success fees under the agreements, petitioners improperly contended that the agreements were void.

Petitioners sought summary adjudication on Liker's claims, with the exception of his claims for recovery in quantum meruit. They maintained that the agreements were void under section 6147 for want of a statutorily required statement, namely, that the success fees were "not set by law but [were] negotiable between attorney and client" (§ 6147, subd. (a)(4)). In denying summary adjudication, the trial court relied on *Franklin v. Appel* (1992) 8 Cal.App.4th 875, 892 [10 Cal.Rptr.2d 759] (*Franklin*), in which the appellate court concluded that the then effective version of section 6147 was inapplicable to "contingency fee agreements outside the litigation context." (8 Cal.App.4th at p. 892.) On June 23, 2010, petitioners filed their petition for writ of mandate, prohibition, or other appropriate relief. We issued an alternative writ of mandate and temporary stay on September 1, 2010.

## DISCUSSION

Petitioners contend that the trial court erred in denying summary adjudication. We agree.

### A. *Governing Principles*

"An order denying a motion for summary adjudication may be reviewed by way of a petition for writ of mandate. [Citation.] Where the trial court's denial of a motion for summary judgment will result in trial on non-actionable claims, a writ of mandate will issue. [Citations.] Likewise, a writ of mandate may issue to prevent trial of nonactionable claims after the erroneous denial of a motion for summary adjudication. [¶] Since a motion for summary judgment or summary adjudication 'involves pure matters of law,' we review a ruling on the motion de novo to determine whether the moving and opposing papers show a triable issue of material fact. [Citations.] Thus, the appellate court need not defer to the trial court's decision. ' "We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale." ' [Citation.]" (*Travelers Casualty & Surety Co. v. Superior Court* (1998) 63 Cal.App.4th 1440, 1450 [75 Cal.Rptr.2d 54], fn. omitted.)

As the material facts are undisputed, the key issues before us concern the application of section 6147. To the extent we must construe section 6147

and related provisions, established principles guide our inquiry. "The objective of statutory interpretation is to ascertain and effectuate legislative intent. To accomplish that objective, courts must look first to the words of the statute, giving effect to their plain meaning." (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437 [35 Cal.Rptr.2d 155].) However, "the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.]" (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) In addition, "[b]oth the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

### B. *Section 6147*

Section 6147 belongs to a trio of related statutes governing fee contracts between lawyers and their clients.[3] In 1975, the Legislature enacted section 6146, which limits contingency fee agreements in medical malpractice actions.[4] (Historical and Statutory Notes, 3B pt. 3 West's Ann. Bus. & Prof. Code (2003 ed.) foll. § 6146, pp. 335–336; *Franklin, supra,* 8 Cal.App.4th at p. 886.) In 1982, the Legislature enacted section 6147 to regulate the form and content of contingency fee agreements outside the medical malpractice context. (*Franklin, supra,* 8 Cal.App.4th at p. 887.) Four years later, the Legislature enacted section 6148, which applies to "any case not coming within [s]ection 6147" (§ 6148, subd. (a)), with exceptions not relevant here (e.g., §§ 6148, subd. (d), 6147.5).[5]

---

[3] In opposing summary adjudication, Liker did not purport to dispute any of the facts identified in petitioners' separate statements, although he challenged some of the items as irrelevant. The trial court overruled Liker's objections. As explained below, the undisputed facts enumerated in the separate statements mandate summary adjudication in petitioners' favor.

[4] Subdivision (a) of section 6146 provides: "An attorney shall not contract for or collect a contingency fee for representing any person seeking damages in connection with an action for injury or damage against a health care provider based upon such person's alleged professional negligence in excess of the following limits: [¶] (1) Forty percent of the first fifty thousand dollars ($50,000) recovered. [¶] (2) Thirty-three and one-third percent of the next fifty thousand dollars ($50,000) recovered. [¶] (3) Twenty-five percent of the next five hundred thousand dollars ($500,000) recovered. [¶] (4) Fifteen percent of any amount on which the recovery exceeds six hundred thousand dollars ($600,000). [¶] The limitations shall apply regardless of whether the recovery is by settlement, arbitration, or judgment, or whether the person for whom the recovery is made is a responsible adult, an infant, or a person of unsound mind."

[5] Subdivision (a) of section 6148 provides: "In any case not coming within Section 6147 in which it is reasonably foreseeable that total expense to a client, including attorney fees, will exceed one thousand dollars ($1,000), the contract for services in the case shall be in writing. At the time the contract is entered into, the attorney shall provide a duplicate copy of the

■ Our focus is on section 6147, which specifies in subdivision (a) that "[a]n attorney who contracts to represent a client on a contingency fee basis" is obliged to ensure that the contract is "in writing" and meets other requirements.[6] Pertinent here is subdivision (a)(4), which mandates that a contingency fee contract outside the scope of section 6146 must contain "a statement that the fee is not set by law but is negotiable between attorney and client." Subdivision (b) of section 6147 further provides: "Failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee."

## C. Trial Court's Ruling

We begin by examining the trial court's ruling. In seeking summary adjudication, petitioners argued that both fee agreements were voidable at their option under section 6147, subdivision (b), because the agreements lacked the statement mandated in section 6147, subdivision (a)(4). The trial court denied summary adjudication on a ground neither raised nor briefed by the parties, reasoning that the fee agreements fell outside section 6147 because they "contemplate[] payment for savings from tax-related services."

contract signed by both the attorney and the client, or the client's guardian or representative, to the client or to the client's guardian or representative. The written contract shall contain all of the following: [¶] (1) Any basis of compensation including, but not limited to, hourly rates, statutory fees or flat fees, and other standard rates, fees, and charges applicable to the case. [¶] (2) The general nature of the legal services to be provided to the client. [¶] (3) The respective responsibilities of the attorney and the client as to the performance of the contract."

Subdivision (c) of section 6148 provides: "Failure to comply with any provision of this section renders the agreement voidable at the option of the client, and the attorney shall, upon the agreement being voided, be entitled to collect a reasonable fee."

[6] Section 6147 provides: "(a) An attorney who contracts to represent a client on a contingency fee basis shall, at the time the contract is entered into, provide a duplicate copy of the contract, signed by both the attorney and the client, or the client's guardian or representative, to the plaintiff, or to the client's guardian or representative. The contract shall be in writing and shall include, but is not limited to, all of the following: [¶] (1) A statement of the contingency fee rate that the client and attorney have agreed upon. [¶] (2) A statement as to how disbursements and costs incurred in connection with the prosecution or settlement of the claim will affect the contingency fee and the client's recovery. [¶] (3) A statement as to what extent, if any, the client could be required to pay any compensation to the attorney for related matters that arise out of their relationship not covered by their contingency fee contract. This may include any amounts collected for the plaintiff by the attorney. [¶] (4) Unless the claim is subject to the provisions of Section 6146, a statement that the fee is not set by law but is negotiable between attorney and client. [¶] (5) If the claim is subject to the provisions of Section 6146, a statement that the rates set forth in that section are the maximum limits for the contingency fee agreement, and that the attorney and client may negotiate a lower rate. [¶] (b) Failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee. [¶] (c) This section shall not apply to contingency fee contracts for the recovery of workers' compensation benefits. [¶] (d) This section shall become operative on January 1, 2000."

In so concluding, the court relied on the holding in *Franklin*, namely, that the version of section 6147 operative when *Franklin* was decided did not apply to contingency fee agreements "outside the litigation context" (*Franklin, supra*, 8 Cal.App.4th at p. 892).

The denial of summary adjudication cannot be affirmed on the basis of *Franklin*. As then effective, former section 6147 stated in subdivision (a) that it applied when "[a]n attorney who contracts to represent a *plaintiff* on a contingency fee basis" (italics added); in addition, section 6147 contained numerous references to the client as a "plaintiff."[7] (*Franklin, supra*, 8 Cal.App.4th at p. 885, fn. 4.) In *Franklin*, a married couple engaged an attorney to assist them in some real estate transactions. (*Id.* at pp. 880–881.) Their agreement contained a contingency fee provision, but lacked the statement regarding the fee's negotiability required in section 6147, subdivision (a)(4). (*Franklin*, at p. 883.)

Despite the statement's absence, the appellate court determined that the agreement was not voidable because it fell outside former section 6147. (*Franklin, supra*, 8 Cal.App.4th at pp. 890–892.) Applying the canons of statutory interpretation, the court reasoned that the occurrence of the term "plaintiff" in former section 6147 limited the provision to contingency fee agreements "involving plaintiffs in litigation matters." (*Franklin*, at pp. 879, 890–892, italics omitted.) Nonetheless, recognizing that the provision's language might not reflect the Legislature's goal in enacting it, the court stated: "Should the Legislature intend section 6147 to apply to all contingency fee arrangements between attorneys and clients generally, irrespective of whether the representation contemplates litigation or transactional matters, a simple amendment to that effect will suffice; client or person may be substituted for

---

[7] The version of section 6147 at issue in *Franklin* provided: " '(a) An attorney who contracts to represent a *plaintiff* on a contingency fee basis shall, at the time the contract is entered into, provide a duplicate copy of the contract, signed by both the attorney and the plaintiff, or his guardian or representative, to the *plaintiff* . . . [.] The contract shall be in writing and shall include . . . : [¶] (1) A statement of the contingency fee rate which the client and the attorney have agreed upon. [¶] (2) A statement as to how disbursements and costs incurred in connection with the prosecution or settlement of the claim will affect the contingency fee and the client's recovery. [¶] (3) A statement as to what extent, if any, the *plaintiff* could be required to pay any compensation to the attorney for related matters that arise out of their relationship not covered by their contingency fee contract. This may include any amounts collected for the *plaintiff* by the attorney. [¶] (4) Unless the claim is subject to the provisions of Section 6146, a statement that the fee is not set by law but is negotiable between attorney and client. [¶] (5) If the claim is subject to the provisions of Section 6146, a statement that the rates set forth in that section are the maximum limits for the contingency fee agreement, and that the attorney and client may negotiate a lower rate. [¶] (b) Failure to comply with any provision of this section renders the agreement voidable at the option of the *plaintiff*, and the attorney shall thereupon be entitled to collect a reasonable fee. [¶] (c) This section shall not apply to contingency fee contracts for the recovery of workers' compensation benefits.' " (*Franklin, supra*, 8 Cal.App.4th at p. 885, fn. 4, italics omitted.)

plaintiff." (*Id.* at p. 891, italics omitted.) After the decision in *Franklin*, the Legislature amended subdivision (a) of section 6147 by replacing several occurrences of "plaintiff" with "client," thereby establishing the current language of subdivision (a). (Stats. 1994, ch. 479, §§ 2–3, pp. 2630–2631.)

■ In view of these amendments, we conclude that section 6147 encompasses contingent fee arrangements regarding litigation and transactional matters, including the fee agreements before us. ■ Generally, "when . . . the Legislature undertakes to amend a statute which has been the subject of judicial construction[,] . . . it is presumed that the Legislature was fully cognizant of such construction, and when substantial changes are made in the statutory language[,] it is usually inferred that the lawmakers intended to alter the law in those particulars affected by such changes." (*Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].) Here, the Legislature's response to *Franklin* establishes that its intent was to apply section 6147 to contingent fee arrangements outside the litigation context.

Liker suggests that the Ameriquest and RoDa fee agreements are not voidable under section 6147 because the Legislature, in amending the statute, did not uniformly replace "plaintiff" with "client." Noting that subdivision (b) of section 6147, in its current form, provides that a noncompliant agreement is "voidable at the option of the *plaintiff*" (italics added), Liker argues that subdivision (b) is inapplicable to the Ameriquest and RoDa agreements. We disagree. " 'The literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in light of the statute's legislative history, appear from its provisions considered as a whole.' " (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1334, fn. 7 [283 Cal.Rptr. 893, 813 P.2d 240], quoting *Silver v. Brown* (1966) 63 Cal.2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689].)

Here, the Legislature's intent in amending section 6147 is clearly established by the changes it made to subdivision (a) of the statute, especially those to the first sentence of the subdivision, which now begins, "An attorney who contracts to represent a *client* on a contingency fee basis shall . . . ." (Italics added.) As the Legislature subjected contingent fee agreements outside the litigation context to the requirements stated in subdivision (a), the Legislature cannot reasonably be viewed as having intended to exempt these agreements from subdivision (b), which functions as the enforcement provision of section 6147. Because the Legislature's failure to replace "plaintiff" with "client" in subdivision (b) appears to be an oversight or drafting error, we reject Liker's contention. (*Bonner v. County of San Diego* (2006) 139 Cal.App.4th 1336, 1346, fn. 9 [44 Cal.Rptr.3d 116] [when drafting error in statute is clear and correction will best carry out the Legislature's intent, courts may disregard the error in interpreting statute].)

### D. *Propriety of Summary Adjudication*

We turn to whether the denial of summary adjudication can be affirmed on another ground. In resolving this question, we may properly examine the merits of petitioners' motion, even though the trial court did not do so in ruling on the motion. (See *Travelers Casualty & Surety Co. v. Superior Court, supra,* 63 Cal.App.4th at pp. 1450–1452.) As explained below, petitioners are entitled to summary adjudication.

■  Subdivision (b) of section 6147 states that "[f]ailure to comply with *any* provision" (italics added) of the statute renders the agreement voidable. Here, it is undisputed that the Ameriquest and RoDa agreements lack the statement regarding the negotiability of the contingent fee mandated in section 6147, subdivision (a)(4). Several courts have concluded that contingency fee agreements displaying this defect are voidable. (*Stroud v. Tunzi* (2008) 160 Cal.App.4th 377, 382 [72 Cal.Rptr.3d 756] [agreement was unsigned and lacked statement regarding contingency fee's negotiability, as well as other required recitals]; *Fergus v. Songer* (2007) 150 Cal.App.4th 552, 570 [59 Cal.Rptr.3d 273] [agreement was unsigned and lacked statement regarding contingent fee's negotiability]; *Alderman v. Hamilton* (1988) 205 Cal.App.3d 1033, 1037–1038 [252 Cal.Rptr. 845] [agreement lacked statement regarding contingent fee's negotiability and other required recitals].) Although none of these courts confronted an agreement whose sole deficiency was the absence of the fee negotiability statement, we conclude that section 6147, subdivision (b), encompasses such agreements.[8]

Liker contends that section 6147 is inapplicable to the Ameriquest and RoDa agreements because they are not contingency fee contracts. His principal argument is that section 6147 does not apply to "hybrid" fee arrangements of the type established in the Ameriquest and RoDa agreements, which combine fixed monthly payments with a variable success fee. In addition, he argues that the percentage rates determining the success fees are too low to render them contingency fees.

■  Liker's contentions present questions of first impression regarding the interpretation of section 6147.[9] As section 6147 does not define "contingent fee," we look first to the term's "plain meaning" for guidance on these

---

[8] To the extent Liker suggests that the fee negotiability statement was not required in the Ameriquest and RoDa agreements because the parties negotiated the fee provisions, he is mistaken. (See *Fergus v. Songer, supra,* 150 Cal.App.4th at p. 572 ["[E]ven if it were undisputed that [the client] knew that contingent fees are negotiable when he signed the . . . contingency fee agreement, that agreement still would have been voidable."].)

[9] Although at least two courts have applied section 6147 to arguably "hybrid" fee contracts (see *Stroud v. Tunzi, supra,* 160 Cal.App.4th at pp. 379–385; *Alderman v. Hamilton, supra,* 205

questions. (*In re Jerry R., supra*, 29 Cal.App.4th at p. 1437.) The term "contingency fee contract" is ordinarily understood to encompass any arrangement that ties the attorney's fee to successful performance, including those which incorporate a noncontingent fee based on a fixed rate of payment. As Witkin explains, the term refers to a contract " providing for a fee the size or payment of which is conditioned on some measure of the client's success.' " (1 Witkin, Cal. Procedure (5th ed. 2008) Attorneys, § 176, p. 245.) The Restatement Third of the Law Governing Lawyers, from which Witkin draws his definition, elaborates: "Examples include . . . a contract that the lawyer will be paid by the hour but receive a bonus should a stated favorable result occur." (Rest.3d Law Governing Lawyers, § 35, com. a, p. 257.) Our Supreme Court has characterized at least one contract of this type as "a contingent fee contract." (*Estate of Kerr* (1966) 63 Cal.2d 875, 878–879 [48 Cal.Rptr. 707, 409 P.2d 931] [addressing contract that paid fixed fee of $200 plus one-half of recovery in specified estate proceedings].)

We find additional guidance on Liker's contentions from *Yates v. Law Offices of Samuel Shore* (1991) 229 Cal.App.3d 583, 591 [280 Cal.Rptr. 316] (*Yates*), which discussed whether the limits on contingency fee contracts in section 6146 apply to hybrid fee arrangements. There, the attorney's fee agreement entitled him to a share of his clients' recovery in a medical malpractice action, and otherwise provided that his fee did not include services he might render in an appeal. (*Yates*, at pp. 585–586.) After the attorney secured a monetary judgment in his clients' favor, he engaged a second attorney at an hourly rate to represent his clients on appeal. (*Id.* at pp. 586–587.) When the attorney asserted that the second attorney's fee was exempt from the limits in section 6146, his clients commenced an action against him. (*Yates*, at p. 587.) The trial court concluded that section 6146 prohibited charging such a fee in addition to the maximum contingent fee allowed under the statute. (*Yates*, at p. 591.)

In affirming, the appellate court stated: "The primary rationale of the trial court's holding was that section 6146 fixes the maximum allowable contingent fee for a medical malpractice action as a whole, including an appeal after judgment, and *the limitation may not be avoided* by charging separate fees for segments of the case or *by charging both contingent and hourly fees*. This construction is strongly supported by the statute's language . . . . It thus plainly appears that [the attorney] was limited to the section 6146 contingent fee for the entire case. He could not enhance that fee by truncating his contingent representation at the appellate threshold and charging additional, ostensibly noncontingent amounts for the appeal." (*Yates, supra*, 229 Cal.App.3d at p. 591, italics added.)

Cal.App.3d at pp. 1036–1038), no court has expressly examined whether section 6147 properly encompasses such fee arrangements.

■ We conclude that the requirements on contingency fee contracts in section 6147, like the related requirements in section 6146, apply to hybrid agreements. This conclusion comports with the language of section 6147, and promotes the Legislature's evident goals in enacting it, namely, to protect clients by ensuring that contingency fee agreements are fair and understood (see *Alderman v. Hamilton, supra*, 205 Cal.App.3d at p. 1037). To hold otherwise would gut section 6147, as it would permit attorneys to avoid the statute's requirements by requiring a noncontingent payment in addition to the contingent portion of their fee.

■ For similar reasons, we also conclude that section 6147 encompasses contingency fee contracts which, like those before us, entitle the attorney to a relatively small percentage of the client's potential recovery. As ordinarily understood, the term "contingent fee" applies to such arrangements, as the amount of the resulting fee is " 'conditioned on *some measure* of the client's success.' " (1 Witkin, Cal. Procedure, *supra*, Attorneys, § 176, p. 245, italics added.) Although arrangements of this type may be uncommon, the agreements before us illustrate that they can implicate substantial fees: Liker's complaint seeks at least $903,936.43 under the RoDa agreement's success fee provision, which entitled Liker to 1 percent of specified recoveries and sales proceeds. Nothing in section 6147 suggests that the Legislature intended to exempt clients involved in such arrangements from the statute's protections.

In an effort to show that the term "contingency fee contract" applies only to agreements in which the fee hinges exclusively on success, Liker directs us to the definition of "contingent fee" in Black's Law Dictionary, namely, "[a] fee charged for a lawyer's services only if the lawsuit is successful or is favorably settled out of court." (Black's Law Dict. (8th ed. 2004) p. 338, col. 2.) However, the entry for "contingent fee" in Black's Law Dictionary expressly recognizes a "reverse" contingent fee, which is described as "[a] fee in which a defense lawyer's compensation depends *in whole or in part* on how much money the lawyer saves the client, given the client's potential liability." (*Ibid.*, italics added.) Accordingly, the entry does not limit the term "contingent fee" to fees predicated exclusively on favorable outcomes.

Liker's reliance on *Estate of Stevenson* (2006) 141 Cal.App.4th 1074 [46 Cal.Rptr.3d 573] (*Stevenson*) and several other cases is misplaced. In *Stevenson*, the administrator of a decedent's estate hired an attorney to represent the estate in the probate proceedings. (*Id.* at pp. 1078–1079.) Under the fee contract, the attorney was to receive twice his ordinary hourly rate unless the estate's assets were insufficient to pay this fee, in which case the attorney was to receive the greater of (1) the estate's assets or (2) a fee calculated at the attorney's ordinary hourly rate. (*Id.* at p. 1080.) After the probate proceedings ended, the attorney's fee request exceeded the estate's net worth. (*Id.* at p. 1081.)

When the probate court declined to enforce the fee contract, the attorney contended on appeal that it constituted a valid contingency fee agreement under Probate Code section 10811, subdivision (c).[10] (*Stevenson, supra,* 141 Cal.App.4th at p. 1083.) The appellate court concluded that it was not a contingency fee agreement, stating: "Contingency fee agreements *typically* provide that counsel shall recover a flat or sliding-scale percentage of 'any' recovery, that is, if there is a recovery. [Citations.] Fees under a contingency fee agreement are not a sure thing. No recovery means no fees. [Citations]. But here the agreement provided for an award of fees once [counsel] started work on the matter regardless of the outcome. The existence and value of assets in the estate determined only whether the fee award would be based on normal hourly rates or double those rates." (*Id.* at p. 1084, italics added & omitted.)

Liker contends that these remarks establish that a contingency fee agreement invariably predicates the fee solely on the client's outcome or recovery. We disagree. The *Stevenson* court held only that the fee contract before it was not a contingency fee agreement, as it guaranteed the attorney a fee based on the estate's assets and the attorney's hourly rate, "regardless of the [action's] outcome." (*Stevenson, supra,* 141 Cal.App.4th at p. 1084.) Although the court noted that contingency fee agreements "typically" predicate the fee on a successful outcome or recovery, the court did not define them in these terms; on the contrary, the court *expressly* declined to decide whether hybrid agreements "that use[] both hourly rates and percentages" are contingency fee agreements. (*Id.* at p. 1086, fn. 2.) The court thus did not resolve the question presented here.

The other cases upon which Liker relies are also inapposite, as none examined whether the term "contingency fee contract," as used in section 6147, encompasses hybrid agreements involving both (1) a fee based on a fixed rate of payment and (2) a fee based on a stated percentage of a favorable outcome. The California cases that Liker cites do not address such agreements. (*Fletcher v. Davis* (2004) 33 Cal.4th 61, 64, 70, fn. 3 [14 Cal.Rptr.3d 58, 90 P.3d 1216] [agreement based on hourly rate, but providing for possibility of a " 'bonus' " consisting of unspecified percentage of judgment if recovery was " 'large,' " is not a contingency fee contract]; *In re County of Orange* (Bankr. C.D.Cal. 1999) 241 B.R. 212, 215, 221 [agreement

---

[10] Subdivision (c) of Probate Code section 10811 provides: "An attorney for the personal representative may agree to perform extraordinary service on a contingent fee basis subject to the following conditions: [¶] (1) The agreement is written and complies with all the requirements of Section 6147 of the Business and Professions Code. [¶] (2) The agreement is approved by the court following a hearing noticed as provided in Section 10812. [¶] (3) The court determines that the compensation provided in the agreement is just and reasonable and the agreement is to the advantage of the estate and in the best interests of the persons who are interested in the estate."

using hourly rate as "benchmark," but permitting law firm to adjust fee in indeterminate manner after consideration of "factors," including complexity of problems, amounts at issue, skills exercised, and "results accomplished," is not contingency fee contract]; *Eaton v. Thieme* (1936) 15 Cal.App.2d 458, 462–463 [59 P.2d 638] [noting that fee agreement entitling lawyer to one-third of potential recovery in payment for his services is "one of a very common variety entered into by attorneys"].) In the remaining out-of-state cases, the courts distinguished hybrid agreements from "traditional" contingency fee agreements and "standard" agreements based on a hourly rate, but did not examine whether they are "contingency fee contracts," within the broad terms of section 6147. (*Paul G. Marshall, P.C. v. Alpha Zenith Media, Inc.* (N.Y.Sup.Ct., Feb. 28, 2008, No. 114522/06) 2008 WL 660427, p. *4 [hybrid agreement is not "traditional" contingency fee agreement]; *Arnold & Baker Farms* (Bankr. D.Ariz.) 44 Bankr. Ct. Dec. 219 [2005 WL 1213818, p. *3] [distinguishing contingency fee agreements and hybrid agreements from "standard lodestar agreement[s] (hours times rate)," for purposes of fee payment in bankruptcy case].)

Liker suggests that under the principles of statutory interpretation, we are obliged to construe section 6147 in a manner that avoids the nonpayment of his success fees, which he characterizes as a forfeiture. We disagree. Under subdivision (b) of section 6147, Liker may collect "a reasonable fee," notwithstanding petitioners' decision to render the success fee provisions void. Furthermore, when a statute protects the public by denying compensation to parties who fail to meet regulatory demands, the statute constitutes a legislative determination that the need for compliance outweighs any resulting harshness, unless Legislature's intent in enacting the statute is uncertain. (See *Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995 [277 Cal.Rptr. 517, 803 P.2d 370].) As explained above, section 6147 clearly encompasses hybrid fee agreements of the type before us.

Finally, Liker maintains there are triable issues precluding summary adjudication. He suggests that the Ameriquest and RoDa agreements involved nonlegal professional services; in addition, he argues that certain equitable doctrines, including estoppel and laches, bar petitioners from seeking the protection of section 6147.[11] As Liker neither opposed summary adjudication on these grounds before the trial court nor identified evidence supporting them in connection with his separate statement, he has forfeited them.[12] (*City*

---

[11] Liker has asked us to take judicial notice of his answer to petitioners' cross-complaint, in which he asserted defenses based on estoppel, laches, and other principles. We hereby grant his request.

[12] At oral argument, Liker's counsel argued that the service agreements required him to provide substantial accounting and business-related professional services outside his role as an attorney. However, Liker raised no triable issues on this matter before the trial court. His

*of San Diego v. Rider* (1996) 47 Cal.App.4th 1473, 1492–1493 [55 Cal.Rptr.2d 422].) In sum, the trial court erred in denying petitioner's motion for summary adjudication.

## DISPOSITION

Let a peremptory writ of mandate issue directing that respondent trial court vacate its order denying petitioners' motion for summary adjudication, and enter a new order granting summary adjudication. The alternative writ, having served its purpose, is discharged, and the temporary stay is vacated effective upon the issuance of remittitur. Petitioners are awarded their costs.

Epstein, P. J., and Suzukawa, J., concurred.

---

separate statement admitted as undisputed that he was an attorney with "special expertise" in taxation and business matters, and that he provided legal services under the Ameriquest and RoDa agreements.